**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| SHADRACK POYON NEYOR, | : | |
| | : | Civil Action |
| Petitioner, | : | No. 06-1203 (JLL) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| ALBERTO GONZALES, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

    SHADRACK POYON NEYOR, Petitioner pro se
    ID. # 105669
    Middlesex County Adult Correction Center
    New Brunsweek, New Jersey 08903

    CHRISTOPHER J. CHRISTIE, United States Attorney
    RUDOLPH A. FILKO, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**JOSE L. LINARES, District Judge**

On September 26, 2005, Petitioner SHADRACK POYON NEYOR (hereinafter "Petitioner"), a native and citizen of Liberia currently detained at the Middlesex County Adult Correction Center in New Jersey, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition")pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security

(hereinafter "DHS").[1] Petitioner, a felon under a final order of removal, asserts that he is being held in custody in violation of 8 U.S.C. § 1231(a)(6), as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment because Petitioner's removal to Liberia is not significantly likely to occur in the reasonably foreseeable future. See Pet. at 1, 3-5.

Respondents filed an answer (hereinafter "Answer") asserting that Petitioner's detention is lawful under § 1231(a)(6) and the holding of Zadvydas, 533 U.S. 678. See Ans. at 3-6.

Having thoroughly examined the papers and considered the arguments of the parties, this Court dismisses the Petition.

## **JURISDICTION**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody could be "in

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights. See Zadvydas, 533 U.S. at 699.

**STANDARD OF REVIEW**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**DISCUSSION**

Petitioner contends that his current detention is not statutorily authorized and deprives him of a liberty interest in violation of the United States Constitution. See Pet. at 4-5 (relying on Zadvydas, 533 U.S. at 700-701).

I.   **Legal Background**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

If during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien, the alien is subjected to a qualifying superceding event (e.g., the alien released from confinement related to a criminal offense files an application seeking judicial review of the alien's removal order, or if this alien is detained/confined on a new charge and then re-released), such superceding event start the alien's removal period anew.  See 8 U.S.C. § 1231(a)(1)(B).

> [There cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates.  The passing of one date does not stop the operation of the statute.  In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final.  If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  If there is another potential event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date.  The obvious reason for this is that [DHS/ICE]'s authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS

795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release.  See id. § 1231(a)(6).  However, in Zadvydas, the Supreme Court held that aliens may be detained further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit *indefinite* detention." (Emphasis supplied)). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention."  Id. at 700-01.

## II.  **Factual Background**

Petitioner's detention in connection with Petitioner's removal should be evaluated through the prism of (1) Petitioner's two underlying criminal convictions; (2) change in Petitioner's status caused by termination of his deferral of removal; and (3)

Page -6-

Petitioner's recent application to the Circuit Court.

Petitioner's first conviction took place on January 6, 1995, when Petitioner was convicted by the Superior Court of New Jersey of a number of controlled-substance related offences. See Ans., Ex. A. Consequently, Petitioner was ordered removed on November 22, 1999. See Pet. at 2. However, the Immigration Judge (hereinafter "IJ") who ordered Petitioner removed granted Petitioner a deferral of removal to Liberia under Article III of the Convention Against Torture (hereinafter "CAT") since Petitioner asserted that Petitioner would be tortured by the then-existing Liberian government. See id. Consequently, Petitioner was released on April 4, 2000, under an order of supervision. See id.

About four and a half years later, on October 19, 2004, Petitioner was convicted by the United States District Court for Northern District of Georgia of various fraud-related offenses and, after being sentenced to twenty one months of imprisonment and serving part of that term, Petitioner (1) was transferred to the DHS custody on July 11, 2005, and (2) had his supervised release revoked four days later, that is, on July 15, 2005, in view of Petitioner's felony convictions in Georgia. See Ans., Exs. B, C.

On December 2, 2005, following changed in country conditions in Liberia, the DHS filed a motion to terminate Petitioner's deferral of deportation under the CAT. That motion was granted by the Immigration Judge on April 21, 2006, hence removing the only

obstacle to Petitioner's removal to Liberia.  See id. Ex. E.

Finally, on May 1, 2006, this Court received Petitioner's Amendment expressly (1) asserting that his removal to Liberia is, in fact, being currently effectuated by the DHS, and (2) seeking injunctive relief preventing the DHS from removing Petitioner to Liberia.[2]  See Docket No. 16, 21.  This Court transferred the Amendment to the Court of Appeals for the Third Circuit pursuant to the REAL ID Act of 2005, § 106(a)(5), to be codified at 8 U.S.C. § 1252(a)(5).  See Docket No. 22.

**III. Analysis**

While Petitioner's "first" removal period ensuing from the underlying first set of offenses was triggered 30 days after the entry of Petitioner's removal order, that is, on December 22, 1999, when Petitioner's time to appeal the IJ's decision to the Board of Immigration Appeals (hereinafter "BIA") expired, see 8 U.S.C. § 1231(a)(1)(B)(I), this "first" removal period is of no relevance to the inquiry at bar, since: (1) Petitioner was released from detention due to his deferral of removal; and (2) the circumstances

---

[2] It appears that Petitioner removal was deferred by the "Grant of a Deferral of Removal under Article III of the United Nations Convention Against Torture."  See Pet., Neyor v. Gonzalez, 06-1203 (JLL), Docket No. 6, at 2.  It further appears that Petitioner's current removal is contemplated due to re-qualification of the status of Liberia for the purposes of the United Nations Convention Against Torture.

relevant to the "first" removal period were superseded in their entirety by those ensuing from Petitioner's federal conviction in Georgia. See 8 U.S.C. § 1231(a)(1)(B)(iii); Michel v. INS, 119 F. Supp. 2d at 498. Therefore, this Court's inquiry is limited solely to the propriety of Petitioner's detention after (1) transfer of Petitioner to the DHS custody on July 11, 2005; and (2) termination of Petitioner's deferral of deportation under the CAT issued on April 21, 2006.

If Petitioner was released into the DHS custody for the purposes of Petitioner's removal, Petitioner's "second" removal period was triggered on July 11, 2005, hence starting Petitioner's 90-day mandatory detention.[3] See 8 U.S.C. § 1231(a)(2). On the very same date, that is, on July 11, 2005, Petitioner's six-month "presumptively reasonable period" of detention began to run and expired on or about January 11, 2006. See Zadvydas, 533 U.S. at 700-701.

Therefore, on or prior to January 11, 2006, the government had

---

[3] Petitioner's record, as supplied to this Court, does not clarify whether, at the time of Petitioner's release into the DHS custody on July 11, 2005, Petitioner was expected (1) to serve the remaining twelve months of his twenty-one month Georgia sentence in the DHS custody and be subjected to removal proceedings after completion of the entire term; or (2) be subjected to removal proceedings right upon Petitioner's release into the DHS custody. Giving Petitioner's application the benefit of a doubt, this Court presumes the latter scenario (otherwise, Petitioner's "second" period of removal would start only on July 19, 2006). The Court, however, expressly notes that such presumption does not amount to a factual finding.

to determine whether there was a "good reason to believe that there [was] no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. It appears that the government timely and duly established to the contrary since, on December 2, 2005, the government filed its motion to terminate the deferral reading as follows:

> [The government] bases its motion to terminate . . . upon changed country conditions in Liberia. [While Petitioner] had claimed that the government of Charles Taylor would torture him[, that danger is no longer present because,] in 2003[,] there was a change in government in Liberia when Charles Taylor resigned the presidency and fled into exile.

Ans., Ex. D at 1-2.

Furthermore, it appears that the government properly concluded that the deferral was the sole impediment to Petitioner's removal (and, hence, Petitioner would be removed promptly if the deferral is terminated) upon finding that

> [Petitioner's situation was] markedly different [from the] position [of] petitioners in Zadvydas . . . . [Since] Liberia [was] not a country such as Cambodia that refuse[d] to accept its citizens back from this country[] when they have been ordered removed, [Petitioner's] case [was not one of] indefinite detention.

Ans. at 6.

Hence, Petitioner's detention from his release into the DHS custody and until the point in time when Petitioner filed the instant Petition was neither "indefinite" nor in violation of the holding of Zadvydas; to the contrary, it was executed with an expectation of Petitioner being soon removed. The sole fact that

the detention exceeded the six-month period is of little relevance. As the Supreme Court of the United States clarified,

> for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts [is whether] the "reasonably foreseeable future" . . . shrink[s]. This 6-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Moreover, in his Amendment, Petitioner himself admits that his removal is not only foreseeable, but it is imminent. See Docket No. 16. Clearly, Petitioner cannot have it both ways, that is, arguing to this Court that his detention in the United States is "indefinite" because the DHS would not be able to remove him to Liberia in the foreseeable future, and yet simultaneously asserting to the Circuit Court that his removal to Liberia is imminent. Therefore, Petitioner's current detention is proper under Zadvydas, 533 U.S. at 701.[4]

---

[4] The sole possible future obstacle to Petitioner's removal is the stay that might ensue from Petitioner's recent application for judicial review. However, if this stay of removal is granted, it would (1) remain in effect only while Petitioner's Amendment is pending in the Court of Appeals; and (2) trigger Petitioner's "third" presumptively-reasonable six-month period upon the Circuit Court's decision pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii). See Singh v. Gonzalez, 2006 U.S. Dist. LEXIS 9695 (D.N.J. Feb. 21, 2006) (making the same finding); Washington v. Ashcroft, 2006 U.S. Dist. LEXIS 5448 (D.N.J. Feb. 8, 2006) (same); Harvey v. Homeland Sec. (BICE), 2006 U.S. Dist. LEXIS 5439 (D.N.J. Feb. 8, 2006).

Accordingly, the Court concludes that, at the current juncture, Petitioner's continued detention is statutorily proper under <u>Zadvydas</u>, 533 U.S. at 701, since Petitioner's removal appears to be imminent.

This Court, however, notes that Petitioner is free to file another § 2241 petition should Petitioner develop good evidence-based reason to believe that his removal is no longer reasonably foreseeable.

### CONCLUSION

For the reasons set forth above, this Petition will be denied. An appropriate order follows.

/s/ Jose L. Linares
**JOSE L. LINARES**
**United States District Judge**

Dated: July 5, 2006